**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

VERONICA SERRANO,
                  Appellant,

        v.

DEPARTMENT OF AGRICULTURE,
              Agency.

DOCKET NUMBER
DA-1221-20-0121-W-1

DATE: August 29, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Veronica Serrano</u>, Mission, Texas, pro se.

<u>Patricia McNamee</u> and <u>Dora Malykin</u>, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and
did not participate in the adjudication of this appeal.

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied the appellant's request for corrective action. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the administrative judge's analysis regarding the appellant's protected disclosures and allegation of a hostile work environment, clarify that the appellant's 2017 reprimand is a covered personnel action but that the appellant failed to establish contributing factor regarding this personnel action, and bolster the administrative judge's discussion of the factors set forth in *Carr v. Social Security Administration*, 185 F.3d 1318 (Fed. Cir. 1999), we AFFIRM the initial decision.

## BACKGROUND

The appellant was employed as a GS-7 Purchasing Agent with the Animal and Plant Health Inspection Service, Plant Protection and Quarantine, Field Operations in Edinburg, Texas. Initial Appeal File (IAF), Tab 31 at 11. As a Purchasing Agent, the appellant was responsible for coordinating and administering procurement and inventories of supplies to support operational plant health programs. *Id*. at 12. The appellant was required to attain and maintain a $25,000 procurement authority, which initially required her to complete 60 hours of training. IAF, Tab 10 at 6, Tab 31 at 13, 19. On June 9, 2015, the Facilities Manager, who was the appellant's first-line supervisor, informed the appellant in a letter that she had completed only 37 of the required

60 hours of training. IAF, Tab 31 at 19-20; Hearing Compact Disc (HCD) (testimony of Facilities Manager). The appellant completed the training within a few weeks after the Facilities Manager sent her this letter. HCD (testimony of Facilities Manager).

On March 27, 2017, the Facilities Manager issued a letter of reprimand to the appellant. IAF, Tab 9 at 75-77. The reprimand was based on a January 19, 2017 meeting between the appellant, the Facilities Manager, a Program Support Specialist, and another agency employee during which the appellant allegedly became "defensive." *Id*. at 75. The Facilities Manager also alleged that the appellant responded disrespectfully to an email he had sent her on February 27, 2017, and that she failed to timely provide him with information he requested. *Id*.

On April 12, 2017, the agency placed the appellant on administrative leave for 6 months following a workplace violence complaint made against her by the Program Support Specialist. IAF, Tab 15 at 17, 32. After being placed on administrative leave, in April and May 2017, the appellant filed complaints with the agency's Office of Inspector General (OIG) as well as numerous Congressional and Government officials. IAF, Tab 15 at 16-24, Tab 28 at 82.

On October 3, 2017, the appellant returned to work for the agency at a different work site; specifically, at a Federal building in McAllen, Texas. IAF, Tab 11 at 26, Tab 15 at 15. In May 2018, she was relocated to Mission, Texas. IAF, Tab 11 at 26. Thereafter, in October or November 2017, the Administrative Officer became the appellant's first-line supervisor. HCD (testimony of Administrative Officer).

In October 2018, the appellant's procurement authority was revoked because she was behind in meeting her continuous learning requirements. IAF, Tab 10 at 22. By letter dated December 20, 2018, the agency suspended the appellant for 3 calendar days, effective January 8, 2019. IAF, Tab 11 at 41-43. The suspension was based on a charge of improper conduct relating to the appellant's alleged failure to pay United Parcel Service (UPS) invoices. *Id*.

On September 16, 2019, the Administrative Officer issued her a notice of proposed removal based on the following two charges: (1) failure to maintain procurement authority; and (2) failure to follow instructions. IAF, Tab 7 at 15-19. Under the one specification underlying the first charge, the agency alleged that, on October 18, 2018, the appellant's "procurement authority was revoked as [she] failed to complete the necessary training to maintain the necessary purchasing authority." *Id*. at 15. In support of the second charge, the agency listed two specifications; first, it alleged that the appellant had been instructed, but had failed, to pay UPS invoice 4314118783 in the amount of $603.48, and second, that the appellant had failed to pay UPS invoice 401011488 in the amount of $3,903.90, after being instructed to do so. *Id*. at 16. On October 22, 2019, the deciding official, who was the Associate Executive Director, sustained the removal. IAF, Tab 11 at 12-15.

The appellant filed a complaint with the Office of Special Counsel (OSC) on October 8, 2019. IAF, Tab 2 at 34, Tab 14 at 25-50. Following the agency's removal decision, she requested that OSC stay her removal, and OSC stayed her removal for 45 days. IAF, Tab 14 at 12, 22, 52. On November 18, 2019, OSC notified the appellant that it was closing her file and not seeking corrective action on her behalf. *Id*. at 8, 23. The following day, the agency informed the appellant that it was removing her effective that date. *Id*. at 22. This appeal followed. IAF, Tab 2.

The administrative judge determined that the appellant established jurisdiction over her appeal. IAF, Tab 16, Tab 76, Initial Decision (ID) at 10-13. Specifically, the administrative judge found that the appellant exhausted her administrative remedies with OSC prior to filing her Board appeal, and that she nonfrivolously alleged that she made protected disclosures and engaged in protected activities that were a contributing factor in a personnel action. IAF, Tab 16 at 1-3; ID at 12. In particular, the administrative judge found that the appellant alleged to OSC the following alleged protected activities and/or

disclosures: complaints or letters to the agency's OIG in both 2015 and April 2017; April 2017 letters to President Donald Trump, U.S. Representative Filemon Vela, Texas State Representative Armando Martinez, and Texas State Representative Sergio Munoz; and May 2017 letters to U.S. Representative Henry Cuellar, Secretary Sonny Perdue, and Senator Ted Cruz. ID at 14-17; IAF, Tab 14 at 18-19, Tab 15 at 20-21, 23-24, Tab 16 at 1-2, Tab 28 at 82. The administrative judge further found that the appellant alleged to OSC that her disciplinary actions for failing to pay the UPS invoices constituted retaliation by the agency for refusing to disobey a law, rule, or regulation. IAF, Tab 14 at 36, Tab 16 at 1; ID at 18.

After holding a hearing,[2] the administrative judge issued an initial decision denying the appellant's request for corrective action. ID. The administrative judge found that the appellant engaged in protected whistleblowing activity under 5 U.S.C. § 2302(b)(9)(C) when she submitted an anonymous complaint to the agency OIG in 2015, and when she sent a report or letter to the agency OIG in 2017. ID at 15. The administrative judge further found that the appellant made protected disclosures under § 2302(b)(8) and engaged in protected activity under § 2302(b)(9) through her 2017 letters to President Trump, Secretary Perdue, and the legislators. ID at 16-17. In addition, the administrative judge found that the appellant failed to show that she refused to obey an order that would have required her to violate a law, rule, or regulation. ID at 17-22.

The administrative judge found that the appellant alleged that she was subjected to the following six purported personnel actions: (1) placement on paid administrative leave on April 12, 2017; (2) her office moving to two different locations, first on October 3, 2017, and then on May 3, 2018; (3) a 3-day suspension in January 2019[3]; (4) her September 16, 2019 proposed removal;

---

[2] The hearing was held via Zoom for Government. IAF, Tab 69.

[3] The administrative judge noted that the suspension occurred in February 2019, but, in fact, it was effective in January 2019. IAF, Tab 11 at 41-43. Any such error, however, did not prejudice the appellant's substantive rights. *See Panter v. Department of the Air*

(5) the agency's decision to remove her on November 19, 2019; and (6) creation of a hostile work environment. ID at 22. The administrative judge found that the appellant failed to establish contributing factor with regard to her placement on administrative leave, but that she did establish contributing factor regarding her office moves. ID at 23-25. Moreover, the administrative judge found that the appellant established that her protected activities and disclosures were a contributing factor in the appellant's 3-day suspension, proposed removal, and removal decision. ID at 25-26. Concerning the appellant's allegation that she was subjected to a hostile work environment, the administrative judge found that the appellant's allegations failed to rise to the level of a personnel action under § 2302(a)(2)(A)(xii). Having found that the appellant established a prima facie case of whistleblower reprisal, the administrative judge turned to the issue of whether the agency met its burden of proof. After applying the factors set forth in *Carr*, 185 F.3d 1318, the administrative judge concluded that the agency showed by clear and convincing evidence that it would have taken the same actions in the absence of the appellant's protected activity. ID at 28-39.

The appellant has timely filed a petition for review. Petition for Review (PFR) File, Tab 1. On review, the appellant reiterates her allegation that she was removed for having made protected disclosures and for refusing to obey an order that would have violated a law, rule, or regulation. *Id*. at 10-11, 20, 27-30. She further alleges that the agency subjected her to a hostile work environment. *Id*. at 13. In addition, the appellant contends that the agency did not have justification to remove her from the Federal Government, citing in part to the testimony of various witnesses and disputing the administrative judge's credibility findings regarding some of these witnesses. *Id*. at 9-23. The appellant further appears to allege that an agency employee who backfilled the appellant's position has failed to obtain the necessary procurement authority but has not been

*Force*, 22 M.S.P.R. 281, 282 (1984) (stating that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

disciplined. *Id*. at 24, 26-27. The agency has filed a response to the appellant's petition for review. PFR File, Tab 3.

## ANALYSIS

After establishing the Board's jurisdiction in an individual right of action (IRA) appeal, as the administrative judge found the appellant did in this case, an appellant must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that she made a protected disclosure or engaged in protected activity that was a contributing factor in a personnel action taken against her. 5 U.S.C. § 1221(e)(1); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). If the appellant makes out a prima facie case, then the agency is given an opportunity to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure or activity.[4] 5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7.

The administrative judge properly found that the appellant engaged in protected activity by filing complaints with the agency's OIG.

As set forth above, the administrative judge found that the appellant engaged in protected activity when she filed a complaint with the agency's OIG in 2015 and made a disclosure to the agency's OIG in 2017. ID at 15-16. We agree. Under 5 U.S.C. § 2302(b)(9)(C), an employee engages in protected activity when she discloses information to an agency's OIG "in accordance with applicable provisions of law." Under the broadly worded provision of 5 U.S.C. § 2303(b)(9)(C), any disclosure of information to OIG is protected regardless of its content as long as such disclosure is made in accordance with applicable

---

[4] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than the "preponderance of the evidence" standard. *Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶ 18 (2003), *aff'd*, 97 F. App'x 322 (Fed. Cir. 2004); 5 C.F.R. § 1209.4(e).

provisions of law.[5] *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8. Thus, the appellant's 2015 and 2017 disclosures meet that broad standard and constitute protected activity under 5 U.S.C. § 2303(b)(9)(C).

<u>The administrative judge properly found that the appellant made protected disclosures under 5 U.S.C. § 2302(b)(8).</u>

A disclosure is protected under 5 U.S.C. § 2302(b)(8) if the individual has a reasonable belief that the information being disclosed evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 12 (2014). The standard for evaluating the reasonableness of the belief is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the Government evidence one of these types of wrongdoing. *Id*.

Here, the administrative judge found that the appellant made protected disclosures in the following communications: (1) an April 17, 2017 letter to Texas Representative Sergio Munoz; (2) an April 23, 2017 letter to U.S. Representative Filemon Vela; (3) an April 26, 2017 letter to Texas Representative Armando Martinez; (4) an April 28, 2017 letter to President Donald Trump, (5) a May 10, 2017 letter to Senator Cruz; (6) a May 18, 2017 letter to Congressman Henry Cuellar; and (7) a May 18, 2017 letter to Secretary Sonny Perdue. IAF, Tab 15 at 20-24, 26-31, 34-39, Tab 28 at 82; ID at 14-17. The parties do not challenge the administrative judge's finding that the appellant made a protected

---

[5] The nature of the disclosures to OIG or OSC may be relevant at the merits stage of an IRA appeal, when an appellant must prove the contributing factor element by preponderant evidence and the agency can defend itself by providing clear and convincing evidence that it would have taken the same personnel action absent the protected activity. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8 n.1; *see Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 13 (2016) (setting forth the elements and burden of proving the merits of an IRA appeal based on a claim of reprisal for perceived activity under 5 U.S.C. § 2302(b)(9)(C)), *overruled on other grounds by Requena v. Department of Homeland Security*, 2022 MSPB 9.

disclosure under 5 U.S.C. § 2302(b)(8) on review and, as set forth below, we discern no basis for disturbing the administrative judge's conclusion on this issue. However, because the administrative judge did not identify the category of wrongdoing at issue under § 2302(b)(8), we modify the initial decision to specify that the appellant's communications disclosed a substantial and specific danger to public health or safety.

The administrative judge properly noted that, in her April and May 2017 letters, the appellant reported that the Facilities Manager had employees climb a 125-foot-tall boom to repair a water tower, and yelled at her when she reported that it was a safety issue. ID at 16; IAF, Tab 15 at 20-24, 26-31, 34-39, Tab 28 at 82. The appellant alleged that the job required professionals, that her coworkers were not qualified to perform the task, and that they were placed in harm's way. ID at 16; IAF, Tab 15 at 20-24, 26-31, 34-39, Tab 28 at 82.

The inquiry into whether an appellant disclosed danger that is sufficiently substantial and specific to warrant finding that it is protected whistleblowing "is guided by several factors, among these: (1) the likelihood of harm resulting from the danger; (2) when the alleged harm may occur; and (3) the nature of the harm, i.e., the potential consequences." *Chambers v. Department of the Interior*, 602 F.3d 1370, 1376 (Fed. Cir 2010) (quoting *Chambers v. Department of the Interior*, 515 F.3d 1362, 1369 (Fed. Cir. 2008)). The Board has held that revelation of a negligible, remote, or ill-defined peril that does not involve any particular person, place, or thing is not a protected disclosure of a substantial and specific danger to public health or safety. *See Sazinski v. Department of Housing and Urban Development*, 73 M.S.P.R. 682, 686 (1997) (determining that an appellant's expression of a fear that someday the agency's field engineering program might not have the resources needed was not a protected disclosure of a substantial and specific danger to public health or safety). However, a danger may be substantial and specific even though the perceived danger is to a limited number of Government personnel and not to the general public at large.

*See Wojcicki v. Department of the Air Force*, 72 M.S.P.R. 628, 634 (1996) (finding that an appellant's report that employees were coughing up blood as a result of improper sandblasting procedures was a disclosure of a substantial and specific danger).

Here, the appellant reasonably believed that she disclosed a specific and substantial risk to the health and safety of agency employees, i.e., the risk of harm and injury to untrained and unqualified agency employees tasked with climbing a 125-foot boom to repair a water tower. *See Chambers*, 602 F.3d at 1379 (finding that the appellant's disclosure that a reduction in the number of police officers available resulted in more traffic accidents was sufficiently specific); *see also Wojcicki*, 72 M.S.P.R. at 634 (determining that the appellant's disclosure regarding import sandblasting procedures was substantial because it affected the appellant as well as several coworkers). Moreover, given the facts known to and easily ascertainable by the appellant, including her awareness of safety measures in place relating to the repair of the water tower, she reasonably believed that the likelihood of such harm occurring was more than speculative. *See Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 15 (2011) (noting that the existence of a triage unit and different areas in the hospital providing different levels of care and monitoring was evidence of the likelihood of harm due to improper patient care and management issues). In particular, the appellant explained that, due to her procurement duties, she knew that trained professionals were required to perform the task of climbing the 125-foot boom to repair the water tower and that performing the repair of the water tower required a contract. To establish that she had a reasonable belief that the information she disclosed evidenced a specific and substantial danger, the appellant was not required to prove that the condition disclosed actually established such a danger, but only that a reasonable person in her position would have believed that it evidenced such a danger. *See, e.g., Mogyorossy v. Department of the Air Force*, 96 M.S.P.R. 652, ¶ 7 (2004). Because we find that the appellant reasonably

believed that her communications evidenced a specific and substantial danger to the safety of agency employees, we modify the initial decision to find that the appellant's April and May 2017 letters disclosed a substantial and specific danger to the safety of agency employees.[6]

The administrative judge correctly found that the appellant failed to prove that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(D).

On review, the appellant reiterates her assertion that the agency disciplined her for refusing to obey an order that would have required her to violate a law, rule, or regulation. PFR File, Tab 1 at 8-10. As explained in the initial decision, the appellant challenged the agency's decision to suspend her for 3 days in January 2019, propose her removal in September 2019, and remove her in November 2019, based on her alleged failure to pay UPS invoices. *Id*.; ID at 17-22. The appellant alleges in her petition for review that the agency's order to pay the UPS invoices violated Federal and agency regulations requiring that all invoice payments be supported by a receiving report or other Government documentation authorizing payment. PFR File, Tab 1 at 8-9, 14-15. Specifically, she contends that U.S. Department of Agriculture (USDA) Cardholder Purchase Card Regulations require that all purchases comply with Federal Acquisition Regulation (FAR) and agency regulations, and that, pursuant to FAR 32.095, all invoices needed to be supported with the relevant Government documentation. *Id*. at 8, 14. The appellant argues that she did not receive necessary supporting documentation from the agency to pay the UPS invoices, and that she therefore would have violated a regulation by paying the UPS invoices as instructed. *Id*.

As set forth by the administrative judge, it is a prohibited personnel practice under 5 U.S.C § 2302(b)(9)(D) to take an action against an employee for

---

[6] In light of this finding, and because the parties do not challenge the administrative judge's findings relating to the appellant's April and May 2017 letters on review, we do not consider whether the appellant's other allegations in these communications evidence another category of wrongdoing under 5 U.S.C. §2302(b)(8). Similarly, we do not consider whether these communications constituted protected activity under section 2302(b)(9).

"refusing to obey an order that would require the individual to violate a law, rule, or regulation."[7] ID at 17. In the initial decision, the administrative judge assessed the appellant's argument that relevant regulations required her to have supporting documentation to pay the UPS invoices, and that the appellant could not pay the invoices because she was not involved in their preapproval. ID at 18. The administrative judge considered the appellant's contention that the payment of invoices violated Section 4.5 and Section 7 of the USDA Cardholder Purchase Card Regulations, which set forth requirements on maintaining documentation on purchase card transactions. *Id.* Following a review of documentary evidence, and after making comprehensive credibility determinations, the administrative judge determined that the appellant failed to show that agency officials' instructions to pay the UPS invoices required her to violate a law, rule, or regulation. ID at 18-22. In relevant part, the administrative judge placed great weight on the testimony of the Director of the Acquisition and Asset Management Division, who explained that UPS invoices reflected payment for services, not purchases, and that he did not agree with the appellant that preapproval was needed. ID at 18-20. The administrative judge noted that the testimony of the Director of the Acquisition and Asset Management Division was supported by

---

[7] The Follow the Rules Act (FTRA), Pub. L. No. 115-40, 131 Stat. 861, was signed into law on June 14, 2017. Prior to the enactment of the FTRA, 5 U.S.C. § 2302(b)(9)(D) made it a prohibited personnel practice to take or fail to take, or threaten to take or fail to take, a personnel action against an employee or applicant for "refusing to obey an order that would require the individual to violate a law." *See Fisher*, 2023 MSPB 11, ¶ 11. In 2016, the U.S. Court of Appeals for the Federal Circuit held that the protection in section 2302(b)(9)(D) extended only to orders that would require the individual to take an action barred by statute. *Rainey v. Merit Systems Protection Board*, 824 F.3d 1359, 1361-62, 1364-65 (Fed. Cir. 2016). The FTRA expanded 5 U.S.C. § 2302(b)(9) (D) to provide that it is a prohibited personnel practice to take or fail to take, or threaten to take or fail to take, an action against an employee or applicant because of "refusing to obey an order that would require the individual to violate a law, rule, or regulation." 131 Stat. at 861; *Fisher*, 2023 MSPB 11, ¶ 12. The administrative judge properly applied the FTRA in considering the appellant's allegations that the agency disciplined her for refusing to obey an order that would have required her to violate a law, rule, or regulation. ID at 17-22.

that of other witnesses, including the deciding official on the 3-day suspension. ID at 20.

On review, the appellant does not appear to challenge the administrative judge's credibility findings on these witnesses' testimony; in fact, the appellant acknowledges that they were "candid in their testimony." PFR File, Tab 1 at 18. Rather, the appellant alleges that the administrative judge erred in giving weight to the testimony of the deciding official on the removal action. *Id.* at 15. In the initial decision, the administrative judge noted that the deciding official on the removal action disagreed with the appellant's position that she should have preapproved the UPS invoices earlier in the process. ID at 21. The administrative judge noted that, according to the deciding official, a UPS invoice is a "bill, not a purchase," and that, in her mind, there is a distinction between making a purchase and paying outstanding bills because the agency uses UPS on a regular basis. *Id.* Citing to *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), the administrative judge found the deciding official's testimony regarding the payment of UPS invoices to be clear and straightforward. The appellant's allegations on review do not provide a basis for disturbing the administrative judge's well-reasoned credibility findings on review, especially given that the deciding official's testimony on this issue is consistent with that of other witnesses whose testimony the appellant does not appear to dispute. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's credibility findings when the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions). In light of the above, we agree with the administrative judge's well-reasoned finding that the appellant failed to prove that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(D).

<u>The administrative judge properly found that the appellant established that her protected activities and disclosures were a contributing factor in a personnel action by preponderant evidence.</u>

*The administrative judge properly found that the appellant did not establish that she was subjected to a hostile work environment.*

As set forth above, the administrative judge found that the appellant alleged that she was subjected to the following six purported personnel actions: (1) placement on paid administrative leave on April 12, 2017; (2) her office moving to two different locations, first on October 3, 2017, and then on May 3, 2018; (3) a 3-day suspension in January 2019; (4) her September 16, 2019 proposed removal; (5) the agency's decision to remove her on November 19, 2019; and (6) creation of a hostile work environment. ID at 22. On review, the appellant appears to disagree with the administrative judge's finding that she was not subject to a hostile work environment. PFR File, Tab 1 at 13; ID at 27-28. In analyzing the appellant's hostile work environment allegation, the administrative judge reviewed the following actions: (1) the appellant was humiliated and thrown out of meetings; (2) the Administrative Officer disparaged her at meetings; and (3) she received a reprimand in March 2017, and was ostracized.[8]

As an initial matter, the Board has found that a letter of reprimand is a personnel action within the meaning of the Whistleblower Protection Act (WPA). *Horton v. Department of Veterans Affairs*, 106 M.S.P.R. 234, ¶ 18 (2007). Thus, the March 2017 reprimand should have been considered as an independent personnel action, and we modify the initial decision accordingly.

We agree, however, with the administrative judge that the appellant's remaining allegations that she was disparaged during, and thrown out of, meetings do not constitute a hostile work environment under the WPA. During the period of time following the issuance of the initial decision, we issued a decision that clarified the meaning of "hostile work environment" as it pertains to

---

[8] While the initial decision noted that the reprimand occurred in April 2017, the record reflects that it was actually issued in March 2017. IAF, Tab 9 at 75-77.

personnel actions under the WPA. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17. In *Skarada*, we explained that allegations of a hostile work environment may establish a personnel action under the WPA only if they meet the statutory criteria, i.e., constitute a significant change in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)(A); *Skarada*, 2022 MSPB 17, ¶ 16. Thus, although the "significant change" personnel action should be interpreted broadly to include harassment and discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute personnel actions covered by § 2302(a)(2)(A)(xii).

Here, although the administrative judge did not have the benefit of *Skarada* when she issued the initial decision, she properly considered the alleged incidents collectively to determine whether they amounted to a significant change in working conditions. ID at 27-28. The administrative judge determined that, while the appellant may have been personally insulted by these incidents, the appellant did not show that she was subjected to the type of objectionable behavior that could be considered a change in working conditions sufficient to constitute a hostile work environment. *Id*. The appellant's cursory and conclusory arguments to the contrary on review do not provide a basis for disturbing this finding. PFR File, Tab 1 at 13. Specifically, the appellant has not shown either below or on review that any actions by agency officials, such as throwing her out of and disparaging her during meetings, were so severe and/or pervasive to amount to significant effects on the overall nature and quality of the appellant's working conditions. *See, e.g., Skarada*, 2022 MSPB 17, ¶¶ 26-29 (determining that the appellant's claims that certain agency officials told him to stop attending certain meetings, excluded him from the hiring process for two new hires, avoided him, failed to provide him with adequate guidance, excluded

him from meetings, would not support his request for a review of his position, yelled at him, and convened investigations against him were not sufficiently severe or pervasive to significantly impact the appellant's working conditions). Thus, we agree with the administrative judge's conclusion that the appellant's allegations fail to amount to a hostile work environment under the WPA.

> *The administrative judge correctly found that the appellant established contributing factor.*

As set forth above, the administrative judge found that the appellant established that her protected whistleblowing was a contributing factor in the following actions: (1) her office moving to two different locations, first on October 3, 2017, and then on May 3, 2018; (2) a 3-day suspension in February 2019; (3) her September 16, 2019 proposed removal; and (4) the agency's decision to remove her on November 19, 2019. ID at 22-28. The administrative judge did not find that the appellant established contributing factor regarding placement on paid administrative leave on April 12, 2017. ID at 24.

The most common way of proving that a disclosure was a contributing factor in a personnel action is the "knowledge/timing" test. *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd per curiam*, 353 F. App'x 435 (Fed. Cir. 2009). Under that test, an appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id*.; *see* 5 U.S.C. § 1221(e)(1). However, the knowledge/timing test is not the only way for an appellant to satisfy the contributing factor standard. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). If an administrative judge determines that an appellant has failed to satisfy the knowledge/timing test, she should consider other evidence, such as (1) evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action; (2) whether the

whistleblowing was personally directed at the proposing or deciding officials; and (3) whether these individuals had a desire or motive to retaliate against the appellant. *Id*., ¶ 15. Any weight given to the whistleblowing disclosure, either alone or in combination with other factors, can satisfy the contributing factor standard. *Id*.

Regarding the appellant's placement on paid administrative leave on April 12, 2017, the administrative judge only considered whether the appellant's 2015 OIG hotline complaint was a contributing factor to her placement on administrative leave, given that the appellant's protected disclosures occurred after this date. ID at 24. The administrative judge found that the two relevant agency officials involved in this personnel action, including the Facilities Manager, lacked knowledge of the appellant's 2015 OIG complaint. *Id*. In reaching this finding, the administrative judge explicitly considered their testimony and found their denials of knowledge of the complaint to be credible. *Id*. We discern no basis for disturbing the administrative judge's credibility findings on this issue.[9] *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (holding that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing).

However, upon finding that the appellant did not establish contributing factor under the knowledge/timing test, the administrative judge should have proceeded to consider other evidence, including the factors identified in *Dorney*,

---

[9] The administrative judge did not explicitly address whether the agency officials in question may have had constructive knowledge of the appellant's 2015 OIG complaint, even though they lacked actual knowledge. *See Dorney*, 117 M.S.P.R. 480, ¶¶ 11-13 (finding that the administrative judge erred in holding that the deciding official must have actual knowledge of an individual's whistleblowing activities in order to support a finding of contributing factor). However, to the extent the administrative judge may have erred on this point, the error was harmless, as there is nothing in the record to suggest that the officials were influenced by an individual with actual knowledge of the 2015 OIG complaint. *See Panter*, 22 M.S.P.R. at 282 (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

to determine whether the appellant satisfied the contributing factor standard by other means. *See Dorney*, 117 M.S.P.R. 480, ¶ 15. The administrative judge did not conduct such an analysis before concluding that the appellant failed to meet her burden of proof. ID at 24. Accordingly, we conduct that inquiry now.

First, we consider *Dorney* factor (1), evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action. The record reflects that the agency placed the appellant on administrative leave pending an investigation into a coworker's allegations that the appellant created a hostile work environment and caused her to fear for her safety. HCD (testimony of Facilities Manager and Administrative Officer); IAF, Tab 15 at 32. Although the agency's investigation ultimately determined that the appellant was not a physical threat to the coworker in question, HCD (testimony of Administrative Officer), we find that the agency had reasonable grounds for placing the appellant on administrative leave in the interim. Regarding factor (2), the appellant did not establish what disclosures she made to OIG in 2015, and hence there is no evidence that her disclosures were directed at either of the responsible agency officials. As to factor (3), given that the two agency officials lacked knowledge, whether actual or constructive, of the 2015 OIG complaint, they could not have had a desire or motive to retaliate against the appellant on that basis. Accordingly, we find that the appellant failed to show that her 2015 OIG complaint was a contributing factor in the agency's decision to place her on administrative leave.

We next consider whether the appellant established that her 2015 OIG complaint was a contributing factor in the March 2017 reprimand which, as discussed above, we consider for the first time on review as a distinct personnel action. The March 2017 letter of reprimand was also issued by the Facilities Manager, whom the administrative judge found lacked knowledge of the appellant's 2015 OIG complaint. ID at 24; IAF, Tab 9 at 75-77. Because the administrative judge found, grounded upon her demeanor-based credibility

determinations, that the Facilities Manager did not have actual knowledge of the appellant's OIG complaint, and there is nothing in the record to suggest that he had constructive knowledge of the complaint, we find that the appellant did not establish contributing factor under the knowledge/timing test. Accordingly, we will consider whether other evidence might support a finding that the appellant's 2015 OIG complaint was a contributing factor in the letter of reprimand. *See Dorney*, 117 M.S.P.R. 480, ¶ 15. Regarding *Dorney* factor (1), the strength of the evidence for the reasons for the agency's action, the letter of reprimand lists numerous acts of alleged disrespectful conduct and failure to follow instructions. IAF, Tab 9 at 75-77. The appellant generally denies those allegations. IAF, Tab 15 at 16. However, even assuming the letter of reprimand was not warranted, we have found no evidence that the Facilities Manager was a target of the appellant's 2015 OIG complaint or had actual or constructive knowledge of it. Under these circumstances, factors (2) and (3) weigh decisively against a finding of contributing factor.

Concerning the administrative judge's findings on contributing factor regarding the remaining personnel actions, we discern no basis for disturbing the administrative judge's determinations that the relevant agency officials involved in these personnel actions had the requisite knowledge of the appellant's protected activities and/or disclosures. *See Crosby*, 74 M.S.P.R. 98, 105-06 (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

The administrative judge correctly found that the agency met its burden of proof by clear and convincing evidence.

In determining whether an agency has met its burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on

the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr*, 185 F.3d at 1323. The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *See, e.g.*, *Yunus v. Department of Veterans Affairs*, 84 M.S.P.R. 78, ¶ 27 (1999), *aff'd*, 242 F.3d 1367 (Fed. Cir. 2001). In *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), the U.S. Court of Appeals for the Federal Circuit clarified that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Id*. at 1368. The court further stated that "[i]t is error for the [Board] to not evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately." *Id*.

*The agency met its burden regarding the appellant's office moves.*

Here, regarding the appellant's office moves on October 3, 2017, and then on May 3, 2018, the administrative judge found that the agency presented strong evidence in support of the moves. ID at 29. The administrative judge noted that another employee had filed a workplace violence complaint against the appellant, and that, following the appellant's return to work after an investigation into the complaint, leadership decided that the appellant could perform her duties in another office, and that it would be better to return her to another office. *Id*. According to the agency, the appellant's second office move occurred after the agency ran out of space in the first location. ID at 29-30. In assessing *Carr* factor one, the administrative judge considered both documentary evidence and relevant witness testimony, including the Administrative Officer's testimony that there had been increased concerns about workplace safety and that he therefore took the workplace violence complaint that had been filed against the appellant

very seriously. ID at 29. We discern no reason for disturbing these findings on review.

Concerning *Carr* factor two, the administrative judge found that the Facilities Manager and Administrative Officer who were involved in the office moves did not have a strong motive to retaliate. ID at 30-31. Citing to *Hillen*, 35 M.S.P.R. at 458, the administrative judge found the Facilities Manager to be straightforward and direct in denying retaliatory motive. ID at 32. The administrative judge noted that the Facilities Manager was candid, direct, and upfront in acknowledging his own shortcomings, stating that the appellant sometimes was correct and that he was counseled on his own performance deficiencies. ID at 30-31. Similarly, the administrative judge found that the motive to retaliate by the Administrative Officer was not strong, finding in relevant part that his testimony was straightforward and direct in denying retaliatory motive. ID at 33.

On review, the appellant appears to dispute the administrative judge's credibility findings regarding the issue of the Facilities Manager's and Administrative Officer's retaliatory motive. PFR File, Tab 1 at 16-17. We discern no basis for overturning the administrative judge's determination that the Facilities Manager and Administrative Officer testified in a candid and straightforward manner. *See Haebe*, 288 F.3d at 1301. Nonetheless, we believe that the record reflects that the relevant agency officials had some motive to retaliate, and we modify the initial decision accordingly. In *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019), the Federal Circuit found that the Board must look at whether there is a "professional" motive to retaliate, i.e., whether the disclosure reflected poorly on the agency or agency component. Here, the appellant's protected disclosures and activity, which occurred prior to the office moves, reflected poorly both on the Facilities Manager and the agency as a whole given that the appellant alleged that the Facilities Manager had endangered the safety of agency employees and raised

concerns about procurement practices.    IAF, Tab 15 at 20-24, 26-31, 34-39, Tab 28 at 82.

Regarding *Carr* factor three, the administrative judge noted that the agency did not present evidence on this factor, which weighed against the agency.   ID at 32.   The Federal Circuit has held that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis," but that the failure to produce evidence, if it exists, "may be at the agency's peril" and may cause the agency to fail to meet its clear and convincing burden.   *Whitmore*, 680 F.3d at 1374.   Here, we find that the absence of any such evidence cannot weigh in favor of the agency.   *See Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018).   Balancing the three *Carr* factors, and in light of the strong evidence that the agency presented in support of the appellant's office moves, we agree with the administrative judge that the agency met its burden of proving that it would have moved the appellant to different offices in the absence of her protected whistleblowing.

*The agency met its burden regarding the appellant's 3-day suspension in January 2019.*

After considering documentary evidence and witness testimony, including that of the deciding official on the suspension and the Administrative Officer, the administrative judge found that the agency presented strong evidence in support of the 3-day suspension.   ID at 33-35.   As previously discussed, the suspension was based on the appellant's purported failure to pay UPS invoices.   IAF, Tab 11 at 41-43.   While the appellant contends on review that the instruction to pay the UPS invoices would have required her to violate a law, rule, or regulation, as we found above, any such assertion is unavailing.   PFR File, Tab 1 at 8, 15.

The administrative judge found that the deciding official on the 3-day suspension and the Administrative Officer, who was also involved in the issuance of the suspension, did not have a strong retaliatory motive.   ID at 35.   In relevant part, the administrative judge found that the deciding official on the suspension

provided undisputed testimony that he did not know the appellant personally, had no knowledge of the appellant's specific complaints, and was not individually named in the appellant's complaint. Citing to *Hillen*, the administrative judge further found the deciding official's denial of any retaliatory motive to be credible. ID at 35. However, focusing narrowly on the motive of individual managers is insufficient. *See Robinson*, 923 F.3d at 1019. Consistent with our analysis pertaining to the appellant's office moves, we modify the analysis of *Carr* factor 2 to find that agency officials had some motive to retaliate given that the appellant's protected whistleblowing activity reflected poorly upon the agency as a whole. *See id*.

Concerning *Carr* factor three, the administrative judge found the deciding official testified that he suspended other employees who are not whistleblowers, and that his testimony on this issue is undisputed. After weighing the three *Carr* factors, we agree with the administrative judge that the agency met its burden of proof regarding this personnel action.

> *The agency proved that it would have proposed the appellant's removal and removed her despite the appellant's protected whistleblowing.*

As set forth above, on September 16, 2019, the Administrative Officer issued the appellant a notice of proposed removal based on the following two charges: (1) failure to maintain procurement authority; and (2) failure to follow instructions. IAF, Tab 7 at 15-19. On October 22, 2019, the deciding official, who was the Associate Executive Director, sustained the removal. IAF, Tab 11 at 12-15. The administrative judge thoroughly considered record evidence and the testimonies of the Administrative Officer and Associate Executive Director in determining that the agency presented strong evidence in support of appellant's proposed removal and removal. ID at 35-37. The appellant alleges on review that the agency lacked a justification for removing her, arguing that she would have violated a law, rule, or regulation by following instructions to pay UPS

invoices, and asserting that she was progressing on her procurement training. PFR File, Tab 1 at 15, 25. We have already found that the appellant's assertion that she would have violated a regulation by paying the UPS invoices is unavailing. Regarding her assertion that she was advancing in the completion of her training requirements, the administrative judge considered this argument and put weight on the testimony of agency officials explaining that the appellant had ample opportunities to complete the training. ID at 35-37. We thus discern no basis for overturning the administrative judge's findings on *Carr* factor one.

Concerning *Carr* factor two, the administrative judge found that the primary motive of the Administrative Officer and Associate Executive Director in taking the removal action was concern over the appellant's failure to complete training requirements and her delay in paying UPS invoices. ID at 37. The administrative judge found both witnesses to be credible in their denial of harboring a retaliatory motive towards the appellant. ID at 37-38. Consistent with our analysis above regarding the other personnel actions at issue, we modify the initial decision to reflect that, because the appellant's protected whistleblowing reflected poorly on the agency as a whole, the Administrative Officer and Associate Executive Director nonetheless harbored some retaliatory motive. *See Robinson*, 923 F.3d at 1019.

Finally, the administrative judge noted that the agency presented evidence concerning the third *Carr* factor; specifically, that procurement authority was revoked for other employees who did not complete the 80-hour training requirement. ID at 38. The administrative judge noted that, according to an agency witness, two of the individuals were ultimately able to complete the training within several months after the revocation, and a third employee went on medical leave. ID at 38-39. The administrative judge concluded that the third *Carr* factor either weighed slightly in favor of the agency or was neutral. ID at 39. Even if the third factor was considered neutral, we agree with the administrative judge that the agency met its burden of proving by clear and

convincing evidence that it would have removed the appellant despite her whistleblowing.

In light of the above, the administrative judge correctly denied the appellant corrective action.

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: 　　　　　*Gina K. Grippando*
　　　　　　　　　　　_____
　　　　　　　　　　　Gina K. Grippando
　　　　　　　　　　　Clerk of the Board

Washington, D.C.